## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEYLEEN LILITH AQUINO,
*f/n/a Dmitry Pronin*,

    Plaintiff,

    v.

OFFICER H. HOLT, et al.,

    Defendants.

Civil Action No.:  SAG-23-3125

### MEMORANDUM OPINION

Pending in this civil rights case are motions filed by *pro se* Plaintiff Leyleen Lilith Aquino,[1] including a Motion for Sanctions, ECF No. 26; Motion for Extension of Time, ECF No. 28; Motion to Compel, ECF No. 29; Motion for Extension of Time, ECF No. 31; Motion for Extension of Time, ECF No. 34, Motion to Appoint Counsel, ECF No. 38; and Motion for Sanctions, ECF No. 39.  Defendants Heath Hott, Ronald Mills, Mark Donia, Jeremy Knieriem, and Ronald Wise have filed a Motion to Dismiss, or in the alternative, for Summary Judgment, ECF No. 21, as well as a Motion for Extension of Time, ECF No. 34; Motion for Leave to File Excess Pages, ECF No. 35; and Motion to Strike, ECF No. 41.[2]  No hearing is required to resolve the pending matters.  *See* Local Rule 105.6 (D. Md. 2025).

For the reasons that follow, Defendants' dispositive motion, treated as a motion for summary judgment, shall be GRANTED in part and DENIED in part.  The remaining non-dispositive motions are addressed individually below.

---

[1] Plaintiff is a transgender female and was formerly known as Dmitri Pronin.  ECF Nos. 1 at 5 and 13.

[2] The Clerk shall be directed to amend the docket to reflect the correct names of the Defendants.

## NON-DISPOSITIVE MOTIONS

**A.**     **Sanctions**

Plaintiff has twice moved for sanctions to be imposed on Defendants.  ECF Nos. 26, 39.

In turn, Defendants moved to strike Plaintiff's motions for sanctions.  ECF Nos. 27, 41.  Under

Fed. R. Civ. Proc. 11(c)(1), this court may "impose an appropriate sanction on any attorney, law

firm, or party that violated the rule or is responsible for the violation."  Additionally, "[a] sanction

imposed under this rule must be limited to what suffices to deter repetition of the conduct or

comparable conduct by others similarly situated." Fed. R. Civ. Proc. 11(c)(4).  Plaintiff's Motions

for Sanctions are construed as allegations that Defendants have violated Fed. R. Civ. Proc. 11(b),

which provides:

> By presenting to the court a pleading, written motion, or other paper--whether
> by signing, filing, submitting, or later advocating it--an attorney or
> unrepresented party certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing
> law or by a nonfrivolous argument for extending, modifying, or reversing
> existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so
> identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if
> specifically so identified, are reasonably based on belief or a lack of
> information.

Fed. R. Civ. P. 11(b).

First, Plaintiff accuses Defendants of "providing false or misleading information" in their dispositive motion regarding the intelligence and investigation components of Maryland Correctional Institution-Hagerstown ("MCI-H") and the larger Department of Public Safety and Correctional Services ("DPSCS"). ECF No. 26 at 2. Additionally, Plaintiff faults Defendants for failing to provide her with a copy of an unpublished opinion cited in their memorandum. *Id.* Plaintiff fails to demonstrate that sanctions are appropriate. Plaintiff has since been provided with the unpublished opinion, ECF No. 27-2, and there is no indication that Defendants' filing is in violation of Rule 11.[3] Moreover, Plaintiff's squabble with Defendants' representation of the organizational structure of the intelligence offices at MCI-H and DPSCS is more appropriately raised in an opposition response to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. Therefore, her first Motion for Sanctions will be denied.

Plaintiff's second Motion for Sanctions also fails to demonstrate any violation of Rule 11 that merits sanctions. In this Motion, Plaintiff complains that Defendants changed their position regarding Defendant Sergeant Hott's location during the relevant time period and provided false information about Plaintiff's cellmate. ECF No. 39 at 2. Defendants argue that Plaintiff misconstrues their filings and that they did not change their position or make incorrect statements regarding Plaintiff's cellmate. ECF No. 41 at 4. In both instances, Plaintiff fails to show that Defendants have violated Rule 11. Her disputes with their filings are subject to interpretation, do not demonstrate any "lie" on the part of Defendants, and are more appropriately addressed in an opposition response. The Motion will be denied.

---

[3] Plaintiff also filed a "Motion to Compel the Defense Counsel to Release the Text of the Unpublished Opinion." ECF No. 29. As Plaintiff has been provided a copy of the opinion, ECF Nos. 27 and 27-2, the Motion will be denied as moot.

Defendants moved to strike Plaintiff's Motions for Sanctions for failure to comply with Federal Rule of Civil Procedure 11(c)(2), which requires a party to provide notice and an opportunity to withdraw or correct the problem filing. ECF Nos. 27, 41. Defendants also argue that Plaintiff's Motions violated Local Rule 105.8(a), providing that "'motions for sanctions will not be filed as a matter of course,'" and that sanctions "'may be imposed upon parties who file unjustified sanctions motions.'" ECF No. 41 at 3. In light of Plaintiff's *pro se* status, the Motions to Strike will be denied. However, Plaintiff should not make further motions for sanctions that do not comply with the federal and local rules.

### B.    Motions for Extensions of Time and for Leave to File Excess Pages

Plaintiff and Defendants have both filed  Motions for Extensions of Time. ECF Nos. 28, 31, and 34. Additionally, Defendants moved for leave to file excess pages in their Reply to Plaintiff's Opposition Response to their dispositive motion. ECF No. 35. Those procedural motions will be granted *nunc pro tunc*.

### C.    Motion for Appointment of Counsel

Finally, Plaintiff has filed a Motion for Appointment of Counsel. ECF No. 38. Plaintiff states that she needs counsel to "explain [] the applicable legal principles, and, thus limit litigation to potentially meritorious issues." Plaintiff also suggests that counsel will be necessary if the case goes to trial. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[4] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an

---

[4] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

indigent claimant must present "exceptional circumstances."  *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it."  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); *see also Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024) ("…a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)).  Because this case is moving to discovery, which would be difficult if not impossible to meaningfully conduct as an incarcerated individual, Plaintiff's Motion for Appointment of Counsel will be granted.

## BACKGROUND

### A.  Plaintiff's Complaint Allegations

In her verified Complaint, Plaintiff states that she arrived at MCI-H in mid-December of 2022.  ECF No. 1 at 5.  Four days after her arrival, Defendant Sergeant Mills[5] ordered her to be transferred to administrative segregation because she had a verified enemy at the institution.  *Id*. Plaintiff alleges that she was given no further explanation nor provided the identity of the supposed verified enemy and was only told that she must be assigned to administrative segregation because she was "'a threat to orderly operations of the institution."  *Id*.

Upon arrival in administrative segregation, Plaintiff was assigned a cell with inmate Ryan Kenneth Harris.  ECF No. 1 at 6.  Plaintiff avers that, "[s]ometime in mid-January 2023 Harris

---

[5] Plaintiff refers to Sgt. Mills as "Intel. Sgt. Miles," however Defendants identified him as Correctional Officer Sergeant Ronald Mills.  ECF Nos. 1 at 5 and 21.

started making suggestive comments to [her], such as 'I really like white queens', 'I like your breasts,' etc. Such comments made [Plaintiff] extremely uncomfortable and fearing for her safety." *Id*. Around the same time, inmate Rodney Green was transferred to administrative segregation. *Id*. Because Plaintiff had previously been housed with Green, she asked Unit Officer Defendant Sergeant Heath Hott to move her to the cell with Green. *Id*. Plaintiff explained to Hott that she was "not comfortable in the cell with Harris, and why." *Id*. Plaintiff further alleges that Harris was "using lots of synthetic drug K2," but it is unclear whether she shared that information with Sergeant Hott or whether the drug use was a reason for her request to change cells. *Id*. Sergeant Hott "refused the move," stating that "Intel. Captain Wise and some Intel lieutenants prohibited the move."[6] Plaintiff attaches a copy of a written request to Sergeant Hott asking to change cells. *Id*.; *see also* ECF No. 1-9. The written request is dated January 20, 2023, and states that "Inmate Ryan Harris who I currently in the cell with makes unwanted sexual advances towards me. Please move me to cell 21(H-1) with Rodney Green. Both Green and I agree to the move. Thank you." ECF No. 1-9.

On January 23, 2023, Plaintiff alleges that her cellmate, Harris, "jumped on the top bunk where [she] was asleep and sodomized [her], raped her." ECF No. 1 at 6-7. The assault triggered a grand mal epileptic seizure, and she lost consciousness until she awoke in the medical department. *Id*. at 7. Upon regaining consciousness, Plaintiff reported the rape to Defendant "Lieutenant (Intel.) Canario",[7] whom she alleges is one of the two lieutenants who denied her request to move to another cell. *Id*. Plaintiff was transferred to the hospital, where "DNA material" was collected that "indicated the presence of Harris's semen there." *Id*.

---

[6] "Intel. Captain Wise" is Defendant Correctional Officer Major Ronald Wise, who was a Captain at the time. ECF No. 21.

[7] Defendants have identified "Lieutenant Canario" as Correctional Officer Lieutenant Jeremy Knieriem. ECF No. 21.

Plaintiff alleges that she should not have been placed in administrative segregation in the first place, and that she was held even longer in administrative segregation as a result of the rape. ECF No. 1 at 7-8.  Plaintiff alleges that her assignment to administrative segregation was in violation of the Prison Rape Elimination Act, and that she was denied educational opportunities, a job, and good time credits.  *Id*. at 7.

As relief, Plaintiff seeks an award of unspecified compensatory and punitive damages. ECF No. 1 at 9.

**A. Defendants' Response**

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment.  ECF No. 21.  In support, Defendants filed a Memorandum of Law (ECF No. 21-1) with several exhibits including the authenticated MCI-H records (ECF No. 21-3) and the Declarations of Defendants Mills (ECF No. 21-4); Hott (ECF No. 21-5); Wise (ECF No. 21-6), Donia (ECF No. 21-7); and Knieriem (ECF No. 21-8).  Defendants argue that 1) they are immune from suit in the official capacities under the Eleventh Amendment; 2) Plaintiff has failed to state a claim regarding her request to move into a cell with inmate Green being denied; 3) Plaintiff has failed to allege sufficient personal participation as to Defendants Wise, Donia, and Knieriem and has not sufficiently alleged supervisory liability; 4) the Complaint fails to state a due process claim regarding Plaintiff's assignment to administrative segregation; 5) the Complaint fails to state a claim for unconstitutional conditions of confinement; 6) the Complaint fails to state a claim for failure to protect her from harm, or alternatively, Defendants are entitled to summary judgment on that claim; and 7) Defendants are entitled to qualified immunity.  ECF No. 21-1.

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all

reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. Additionally, Plaintiff was advised of her right to respond in opposition to the Motion, and she did so. ECF Nos. 22, 33. Therefore, as to certain claims, Defendants' Motion shall be construed as one for summary judgment.

## DISCUSSION

### A.     Official Capacity Claims

First, Defendants argue that they are immune from suit in their official capacities under the Eleventh Amendment to the United States Constitution. ECF No. 21-1 at 18.  Under the Eleventh Amendment, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Id.*, citing *Florida Dept of Health & Rehab. Servs. v. Fla. Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School & Hosp.*, 465 U.S. at 100 (emphasis in original). Therefore, to the extent that Plaintiff is suing any or all of the Defendants in their official capacity, those claims amount to claims against a State agency and must be dismissed.

### B.  Failure to Protect

The crux of Plaintiff's Complaint is that officers failed to protect her from being sexually assaulted by her cellmate after she told Sergeant Hott, verbally and in writing, that her cellmate was making unwanted sexual advances toward her and that she wanted to be moved to a cell with inmate Green.  ECF No. 1.  Defendants aver that they did not know Plaintiff was in any danger, and that she never voiced any concern about her safety.

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).  A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established.  *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014).  The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  *Id*. at 837.  A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Other than records showing that Plaintiff's claim that her cellmate sexually assaulted her was found to be "unsubstantiated" after an investigation, ECF No. 21-3 at 28, there is no evidence to refute Plaintiff's verified statement that she was raped and sodomized by her cellmate. Such an assault clearly amounts to a serious physical and emotional injury. Moving to the subjective component, whether Defendants knew Plaintiff was at risk of serious harm, the evidence is less clear.

In her verified Complaint, Plaintiff avers that she personally told Sergeant Hott that her cellmate was making unwanted sexual advances toward her and that she wanted to move to a different cell with inmate Rodney Green. ECF No. 1 at 6. Specifically, she avers that she "requested Unit Officer H. Hott to move her out of the cell with Harris, and place her in the cell with Green, clearly explaining she was not comfortable in the cell with Harris and why." *Id.*

Sergeant Hott declares that Plaintiff "spoke to [him] through the cell door" and asked to change cells. ECF No. 21-5 at 2. He told her he was not authorized to make the requested change, but that he would "relay the request to case management." *Id.* Hott declares that Plaintiff "persisted with the request" during each of his rounds on the tier, "typically every 30-45 minutes." *Id.* at 2-3. After "about three requests," Hott received a call from an unknown person who notified him that "per Intel, nobody was to be moved into the cell with Green." *Id.* at 3. During his next round, he "told Plaintiff that the move would not be authorized. Plaintiff did not express any fear for safety or discomfort with Plaintiff's cellmate, and Plaintiff did not make any further inquiries to [him] about moving cells." *Id.* While Hott declares that Plaintiff never expressed "any fear for safety or discomfort with [her] cellmate," he also stated that if she had "explained that she felt like

her cellmate was making unwanted sexual advances," he would have "immediately remove[d] her from the cell where she felt unsafe," "even if she did not put it in express terms of 'fear' or 'safety.'" *Id*. It is undisputed that Plaintiff was not removed from the cell until after the alleged sexual assault.

Plaintiff also alleges that she submitted a written request to defendant Hott stating that her cellmate was making unwanted sexual advances and requesting that she be moved to the cell with Green. ECF Nos. 1 at 6 and 1-9. Defendants present evidence bringing into question the authenticity and veracity of the written request Plaintiff alleges that she gave to Hott. For example, Hott avers that "[t]he first time I ever saw this Inmate Request form from Plaintiff was when I saw it attached to the Complaint in this case." *Id*. at 4. Hott states that he was not working in the segregation tier on January 20, 2023, and that he was assigned to an offsite hospital on January 21-23, 2023. *Id*. at 3-4. Additionally, Kara Bowers, Administrative Aide at MCI-H declares that she searched for this inmate request and any response to it and found no record of either. ECF No. 21-3. In their reply memorandum, Defendants state that they "**object** to the proffered exhibit" as inadmissible hearsay. ECF No. 36 at 28. Without ruling on the admissibility of the exhibit, the Court finds it unnecessary to consider for the purpose of the instant motion.

Putting aside the questionable written request, the fact remains that Plaintiff submitted a verified Complaint that specifically alleges she verbally told Hott about her cellmate's unwanted sexual advances, whereas he says she made no such statement. This constitutes a genuine issue of material fact. While Hott later argues that Plaintiff fails to present evidence that he "actually drew the inference that Plaintiff was at risk of sexual victimization" due to having observed Plaintiff and Harris "joking with each other and laughing loudly," ECF No. 36 at 31, Hott's own declaration states that such complaints are taken very seriously and would have led to Plaintiff being removed

from her cell.  On the current record, Sergeant Hott's motion, construed as one for summary judgment, must be denied.

The remaining defendants, however, stand in a different position. While Plaintiff alleges that she told Sergeant Hott about her problems with her cellmate, she makes no allegation that she communicated those concerns to anyone else.  Even assuming that Defendants Major Wise and Lieutenants Donia and Knieriem were responsible for denying Plaintiff's request to change cells, there is no evidence to show that those Defendants knew of her safety concerns. Wise, Donia, and Knieriem each declare that they had limited interaction with Plaintiff and that she never mentioned any concern for her safety to them.  ECF Nos. 21-6; 21-7; and 21-8.  Wise states that he delivered mail to Plaintiff on at least one occasion and did not have further personal interaction with her. ECF No. 21-6 at 2.  He also describes events wherein Plaintiff and/or Green requested they be housed together in exchange for providing information on illegal activity, but he has no knowledge of Plaintiff's request to move because of safety concerns.  *Id*. at 2-3.  He does not state when Plaintiff's and/or Green's request to be housed together was made, and states that he does not know who made the request.[8]  *Id*.  Lieutenant Knieriem states that "the first and only interaction [he] had with Plaintiff was taking the January 23, 2023, PREA complaint" before she was transported to the hospital.  ECF No. 21-8 at 2-3.  Knieriem further avers that he had no involvement in assigning Plaintiff to administrative segregation or to any particular cell.  *Id*.  Lieutenant Donia delivered mail to Plaintiff multiple times and conducted one segregation review with Plaintiff.  ECF No. 21-

---

[8] In their Reply to Plaintiff's opposition response, Defendants argue that Plaintiff's request to be housed with Green was a "*quid pro quo* request" made solely as a preference.  ECF No. 36 at 15.  However, viewed in the light most favorable to Plaintiff, even if Plaintiff requested to move in with Green as a *quid pro quo* as Wise recalls, ECF No. 21-6 at 2-3, Plaintiff could have separately made a request to be housed with Green in response to her cellmate's sexual advances as alleged.

7 at 2-3.  He does not recall her mentioning any fear for her safety.  *Id*. at 3.  He also states that he does not recall any personal involvement with her housing request.  *Id*. at 2.

While Plaintiff takes issue with certain details in Defendants' statements in an attempt to discredit them, none are material.  *See e.g.*, ECF Nos. 33-1 at 3; 33-2 at 1-2.  Defendants state that they did not know of Plaintiff's safety concerns, and she presents nothing to refute their statements on that material issue.  Therefore, Defendants Wise, Donia, and Knieriem are entitled to summary judgment.

### C.    Administrative Segregation

Plaintiff also alleges that she was denied due process when Defendant Sergeant Mills assigned her to the administrative segregation unit because of a verified enemy "without ANY further explanation, and without the disclosure of the identity of 'the enemy.'"  ECF No. 1 at 5.  She additionally alleges that, as a result of being assigned to administrative segregation, she was denied educational and job opportunities and suffered poor conditions, including two floods that destroyed her legal paperwork.  *Id*.

In response, Sergeant Mills declares that he received a phone call from a "shop supervisor," stating that an incarcerated shop worker had informed him that he had seen Plaintiff at MCI-H, and that he requested that they be designated enemies and kept apart because the shop worker had testified against Plaintiff at a criminal proceeding. ECF No. 21-4 at 2. Mills documented the enemy complaint and referred it to Case Management. *Id*. He also completed paperwork "to place Plaintiff on administrative segregation pending investigation of the enemy complaint. The investigation confirmed the [] shop worker's allegations and, as a result, their enemy status was verified in the DPSCS Offender Case Management System." *Id*. Mills further avers that "[f]or the safety of the I.I. who reported a fear for his safety after seeing Plaintiff at the institution, Plaintiff was not

entitled to receive further details about the enemy complaint." *Id*. Plaintiff remained on administrative segregation until alternative housing arrangements could be made. *Id*. Mills declares that, to the best of his recollection, he had no further involvement with Plaintiff. *Id*.

Plaintiff's claim that her due process rights were violated when she was placed in administrative segregation fails. The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a due process claim, a plaintiff first must establish the existence of a property or liberty interest for which "procedural protections are due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Then, the plaintiff must show the defendants deprived her of that interest without providing her with the protections she was due. *Id*. Imprisonment does not deprive a prisoner of a protected liberty interest unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 222–24 (2005) (quoting *Sandin*). The comparison of the challenged conditions to "those [a prisoner] could expect to experience as an ordinary incident of prison life necessarily is fact specific," but "whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). "[E]ven when an institutional restriction impinges a specific constitutional guarantee, . . . the practice must be evaluated" with great deference to the prison administrators' decisions and with "the central objective of prison administration, safeguarding institutional security," in mind. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Assignment to administrative segregation does not, in and of itself, impose an atypical and significant hardship. *See Sandin*, 515 U.S. at 485 (finding no liberty interest protecting against a

thirty-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence"); *Beverati*, 120 F.3d at 504 (finding six-month period in administrative segregation was not so atypical that it implicated a liberty interest). To determine whether, under the facts of a case, administrative segregation imposes an atypical and significant hardship, the court considers "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." *Incumaa v. Stirling*, 791 F.3d 517, 531–32 (4th Cir. 2015), *as amended* (July 7, 2015) (finding liberty interest where the appellant's "20-year stint in highly restrictive solitary confinement" was "extraordinary in its duration and indefiniteness").

Moreover, it is well established that prisoners do not have a constitutional right to access jobs or to demand to be housed in one prison rather than another, absent a showing of significant hardship. *See Sandin*, 515 U.S. at 484; *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (work assignments are at prison officials' discretion). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Courts also should give great deference to decisions made by officials relating to their administration of a prison facility. *Bell,* 441 U.S. at 547. As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

The unrefuted evidence shows that Plaintiff was placed in administrative segregation due to a complaint by another inmate that he and Plaintiff should be designated as enemies and kept

17

apart because the inmate had testified against Plaintiff in a criminal matter.  ECF No. 21-4 at 2.

After receiving this complaint, Sergeant Mills forwarded the information to case management for

investigation and processed paperwork to place Plaintiff on administrative segregation pending the

investigation.  *Id*.  The information was verified upon investigation.  *Id*.  The process described by

Mills regarding how the enemy complaint was handled exemplifies the type of prison

administration decision-making process utilized for the purpose of safeguarding the security of the

institution and demands the Court's deference.  Additionally, Plaintiff has not shown that she was

subjected to any atypical or significant hardship while in administrative segregation; her time there

was limited to less than three months.[9]  *See*, ECF No. 21-3 at 30.

　　　　To the extent that Plaintiff alleges her placement in administrative segregation amounted

to cruel and unusual punishment, that claim likewise fails.  Indeed, the Eighth Amendment

proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and

unusual punishment.  U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see

Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may

amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

　　　　"[T]to establish the imposition of cruel and unusual punishment, a prisoner must prove two

elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and

that *subjectively* the officials acted with a sufficiently culpable state of mind."  *Shakka v. Smith*,

---

[9] Plaintiff's claim that her designation to administrative segregation following her return from the hospital violates the Prison Rape Elimination Act ("PREA") is unavailing.  The PREA, 34 U.S.C. § 30301, *et seq*., was enacted "[t]o provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape."  PREA, Pub. L. No. 108-79, 117 Stat. 972 (2003).  Nothing in the PREA suggests that Congress intended to create a private right of action for prisoners to sue for non-compliance.  *See Williams v. Dovey*, No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) (citing cases).  Furthermore, there is nothing in the record to show that Plaintiff was in administrative segregation for any reason other than the identification of a verified enemy at the facility.

71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Plaintiff has not alleged or attempted to prove that she was deprived of a basic human need or that she has suffered any serious injuries as a result of being housed in administrative segregation. Her allegation that she lost her legal papers to flooding does not amount to a constitutional violation because it is not a significant physical or emotional injury.

As Plaintiff has not shown that her constitutional rights were violated due to her placement in administrative segregation, Defendants are entitled to summary judgment on those claims.

### E.    Supervisory Liability

To the extent that Plaintiff alleges that any Defendants are liable in their supervisory capacities, such claims fail as well. In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the

19

plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

In her opposition response, Plaintiff addresses supervisory liability by reciting case law, however, she provides no factual basis for her claim that the "Intel. Defendants" should be held liable for the harm to her. ECF No. 33 at 14. She does not allege that they supervised any subordinate who was engaged in unconstitutional behavior or that they were aware of such action or inaction and declined to address it. Because Plaintiff has not plead sufficient facts to state a claim of supervisory liability against any Defendant, any such claims are dismissed.

## F.    Qualified Immunity

As to Defendant Hott, his qualified immunity defense is unavailing at this stage of the litigation, because Plaintiff has alleged facts suggesting that the constitutional right was well-established at the time of the incidents at issue and that conduct allegedly violative of her constitutional rights actually occurred. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Sergeant Hott is, of course, free to reassert the defense at subsequent stages of the proceedings.

## CONCLUSION

By separate order which follows, the Court DENIES in part and GRANTS in part Defendants' motion to dismiss, or in the alternative, for summary judgment. Defendant Hott's Motion, construed as a motion for summary judgment, IS DENIED as to Plaintiff's failure to protect claim and otherwise GRANTED. Defendants Mills, Donia, Knieriem, and Wise's Motion, construed as a motion for summary judgment, IS GRANTED. Plaintiff's claims against all Defendants in their official capacities ARE DISMISSED. Plaintiff's motion to appoint counsel is GRANTED.


August 27, 2025                                     /s/
_____          _____
Date                                               Stephanie A. Gallagher
                                                   United States District Judge

21